UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL D. E., )<br>)<br>       **Plaintiff** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security*,[1] )<br>)<br>       **Defendant** ) | No. 1:20-cv-00280-DBH |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable, through his date last insured for SSD benefits, December 31, 2018 (DLI), of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating the opinion of his treating psychiatrist, Arthur Dingley, D.O., and in understating the lifting and carrying restrictions flowing from his use of a cane. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 14) at 2-7. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

through December 31, 2018, Finding 1, Record at 26; that, through his DLI, he had the severe impairments of ischemic heart disease, degenerative disc disease of the cervical spine, status post-fusion, degenerative joint disease of the bilateral knees, degenerative joint disease of the left hip, depressive disorder, and anxiety disorder, Finding 3, *id*.; that, through his DLI, he had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was limited to lifting and carrying 10 pounds and to four hours of standing or walking, needed a cane to walk, could frequently push, pull, and reach overhead with his bilateral upper extremities, could frequently push and pull with his bilateral lower extremities, could occasionally balance, stoop, and climb ramps or stairs, could not kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, needed to avoid unprotected heights, was limited to performing simple tasks, could tolerate only a simple change in routine, and could not tolerate interaction with the public, Finding 5, *id*. at 30; that, through his DLI, considering his age (48 years old, defined as a younger individual, as of his DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 39; and that he, therefore, had not been disabled from March 17, 2017, the day after a prior decision was rendered, through December 31, 2018, his DLI, Finding 11, *id*. at 40. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

    The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Challenge to ALJ's Handling of Dr. Dingley's Opinion

In a July 13, 2018, treatment note, Dr. Dingley noted that the plaintiff was "not doing at all well[,]" "looks frail and ill today[,]" had undergone "injections into his cervical spine" that had "amplified his pain considerably[,]" was "apparently a surgical candidate, and might be a candidate for implantation of a nerve stimulator device as well," but had "no medical insurance[,]" and his "current dose of oxycodone" was "not doing much to moderate his discomfort." Record at 1033. He added that the plaintiff's increased pain made it "difficult for him to sleep" despite medication. *Id*. He stated:

> Why the Social Security Administration has any idea that Michael can perform substantial gainful activity is not apparent to me since he is clearly completely disabled. The pain is interrupting his ability to think clearly or concentrate on anything for more than brief periods of time for that matter.

*Id*.

The ALJ acknowledged this opinion but declined to adopt it for several reasons: that it was "unpersuasive" because it was "vague and conclusory[,]" that Dr. Dingley's statements regarding disability and the plaintiff's ability to perform substantial gainful activity were statements on issues

3

reserved to the commissioner and, hence, were "inherently neither valuable nor persuasive[,]" and that the opinion was "inconsistent with the clinical evidence, which showed that the [plaintiff] was not nearly as limited as opined, and was capable of performing light exertion level work, with additional limitations" that the ALJ had adopted. *Id*. at 36. More specifically, he noted, the record contained "no evidence substantiating the [plaintiff]'s subjective reports that he could not concentrate for more than brief periods of time" and "no evidence of any repeatedly poor attention, concentration, or memory during mental status examinations[,]" with "only one mental status exacerbation significant enough to require extended inpatient hospitalization treatment." *Id*.

The plaintiff asserts that the ALJ erred in discounting Dr. Dingley's opinion that he could not concentrate for brief periods of time due to pain, which was not based on subjective complaints but, rather, Dr. Dingley's own observations as set forth in that and other treatment notes. *See* Statement of Errors at 3-4.[3] He adds that Dr. Dingley's opinion was consistent with other evidence of record "indicating multiple pain generating conditions and procedures involving the neck, hip, and both knees[,]" including a September 5, 2017, mental status examination in which a social worker noted "frequent grimacing and shifting due to pain[,]" and the ALJ's own RFC finding that his standing and walking abilities were limited and he required a cane to ambulate, "consistent with lack of ability to concentrate due to pain." *Id*. at 4-5; Record at 999.

He argues that, because the vocational expert (VE) present at his hearing testified that there would be no jobs for a person who was off task for 15 percent of the workday, the error was not harmless. *See* Statement of Errors at 5.

---

[3] The plaintiff observes, for example, that Dr. Dingley described him on August 15, 2018, as having "withdrawal symptoms" and "considerably amplified" pain after his oxycodone prescription was terminated, and on February 2, 2018, as having returned to Dr. Dingley's office "obviously in considerable pain." Statement of Errors at 4 (quoting Record at 986, 1036).

4

I find no error in the ALJ's weighing of the opinion evidence. Regulations applicable to claims filed on or after March 27, 2017, as was this one, *see* Record at 24, provide, "We will articulate in our . . . decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record[,]" 20 C.F.R. § 404.1520c(b). However, the decision-maker need only explain his or her consideration of the two most important factors in that evaluation, supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). With respect to consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

The ALJ duly articulated his findings with respect to both key factors, concluding that both cut against adoption of the Dingley opinion. With respect to supportability, he reasonably deemed the Dingley opinion vague and conclusory. Indeed, while Dr. Dingley described the plaintiff as "look[ing] frail and ill" and reporting increased pain, he neither explained his opinion that the plaintiff's pain had interrupted his ability to concentrate for more than brief periods nor cited specific objective findings in support of it. Record at 1033.

With respect to consistency, the ALJ supportably deemed the Dingley opinion inconsistent with other evidence of record, including the prior administrative findings of agency nonexamining consultants Thomas Knox, Ph.D., and David Houston, Ph.D., which he found persuasive. *See id.* at 36. As the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 4, Dr. Houston reviewed the record on November 29, 2018, only

one month prior to the plaintiff's DLI, and specifically considered Dr. Dingley's July 13, 2018, opinion, *see* Record at 136-37.  The ALJ also reasonably found the Dingley opinion inconsistent with a lack of evidence "of any repeatedly poor attention, concentration, or memory during mental status examinations."  Record at 36; *see also, e.g.*, *id*. at 714, 721, 728, 735, 793, 799, 829 ("[g]ood eye contact, speech clear, affect normal"); 845, 864, 871 (in "[n]o acute distress" with "[a]ppropriate eye contact and mood"); 968 ("appropriate mood and affect"); 982 ("alert and oriented" with appropriate affect, normal eye contact, pleasant mood); 995 (alert with "[v]ery flat affect and congruent mood, normal speech, normal thought processes); 1004 ("awake & alert" with "[f]lat affect and congruent mood though mildly angry at times when discussing anxiety medication . . ., normal speech"); 1013, 1022 ("alert and oriented, cooperative, in no acute distress").[4]

No more was required.

### B.  Challenge to Adequacy of Assessed Limitations Given Use of Cane

The plaintiff next contends that, while the ALJ determined that he needed a cane to walk, he did not adequately account for limitations attributable to his cane use.  *See* Statement of Errors at 6-7.  He argues that his "need for a cane for balance involved limitations of both lower extremities (bilateral knee pain as well as a left hip impairment), which pursuant to SSR [Social Security Ruling] 96-9p implicates a greater lifting and carrying restriction" than the limitation to lifting and carrying 10 pounds assessed by the ALJ.  *Id*. at 7.  Again, I find no error.

---

[4] The plaintiff describes the ALJ's finding that there was no evidence of repeatedly poor concentration in mental status examinations as "unconsidered boilerplate and a straw man in that Dr. Dingley's visits do not include mental status exams as such."  Statement of Errors at 4.  I find no error.  Dr. Dingley did make what appear to be mental status examination findings; for example, he described the plaintiff on July 13, 2018, as "[a]lert, attentive, sad and irritable but cooperative and organized[,]" Record at 1033, and on other occasions as alert and attentive, *see id*. at 970, 974, 987, 990.

The ALJ adopted the assessment of Dr. Trumbull that the plaintiff could only occasionally lift and/or carry 10 pounds and that a cane was "appropriate for ambulation as needed." *Compare* Finding 5, Record at 30 *with id*. at 138.  Dr. Trumbull reviewed the plaintiff's case on November 29, 2018, only a month prior to the plaintiff's DLI, *see id*. at 139, and the only contrary expert opinion of record was even less restrictive: Dr. Green found on July 2, 2018, that the plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, with "no evidence to support the need for a cane[,]" *id*. at 128-29.

The plaintiff, nonetheless, relies on the following passage from SSR 96-9p to support greater limitations:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.  For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers.  <u>On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.</u>

Statement of Errors at 6-7 (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added by plaintiff) (footnote omitted)).

As the commissioner observes, *see* Opposition at 7, no expert indicated that the plaintiff needed a cane for balance.  Rather, the ALJ adopted Dr. Trumbull's finding that the plaintiff needed a cane to walk. *Compare* Finding 5, Record at 30 *with id*. at 138.  The plaintiff relies on a combination of his medical conditions and the language of SSR 96-9p to argue that he required a

7

cane for balance. *See* Statement of Errors at 7. Yet, his reliance on SSR 96-9p is misplaced: that ruling presupposes, rather than dictates, an RFC finding.

As the commissioner notes, *see* Opposition at 7-8, SSR 96-9p speaks to the extent to which the occupational base for sedentary work is eroded by various functional limitations, heightening the need for an ALJ to use means other than the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, to determine whether a claimant is capable of performing work existing in significant numbers in the national economy, *see* SSR 96-9p at *3-6. Indeed, the ruling itself instructs that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled[,]'" directing that, at Step 5, "consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." SSR 96-9p at *1.

In this case, the ALJ did just that, employing the services of a VE to determine whether a hypothetical person who, *inter alia*, could lift and carry only 10 pounds and needed a cane to walk could perform work existing in significant numbers in the national economy. *See* Record at 74-76. The VE identified three sedentary jobs that such a person could perform, on which the ALJ relied at Step 5. *See id.* at 39-40, 76.

Again, no more was required.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum*

*and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of September, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge